UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRYAN HEPPER,

          Plaintiff,

v.                                                   Case No. 19-cv-1641-bhl

ANDREW THEOHARIS,

          Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

      In this case, both the buyer and seller of a fast car accuse one another of trying to pull a proverbial "fast one." The buyer claims the seller intentionally misrepresented his vehicle as an authentic 1969 Chevrolet Convertible Roadster. The seller counterclaims that the buyer defrauded him by trying to return the Corvette without disclosing that it had been in a post-transaction accident. The parties have filed cross-motions for summary judgment. Because disputes of fact preclude summary judgment on two of the buyer's claims, the Court will grant, in part, and deny, in part, the motions.

### FACTUAL BACKGROUND

      In late-November 2016, Defendant Andrew Theoharis traded his 1971 Pontiac Trans Am for what a California car collector represented as an authentic 1969 Corvette Convertible Roadster, complete with: (1) tank sticker, (2) shipper document, and (3) Protect-O-Plate. (ECF No. 76 at 2.) A "tank sticker," or Corvette Order Copy, is a build sheet placed on top of the gas tank, which informs assembly line workers what options to install. (ECF No. 56 at 7-8.) A car's shipper document is a carbon copy of the window sticker that indicates how the vehicle was built, the options installed, and the original colors and style. (*Id.* at 8.) And a Protect-O-Plate is a metal plate about the size of a credit card embossed with numbers and letters that, when fed into a reader, provides a technician with information needed to service the corresponding car. (*Id.*) Together, these documents can assist in authenticating a vehicle. (ECF No. 72 at 6 n.4.)

After taking possession of the Corvette, Theoharis submitted the tank sticker and shipper document to the National Corvette Restorers Society (NCRS) for review. (ECF No. 68 at 3.) Timothy Gilmore, a Document Validation Administrator at NCRS, responded and informed Theoharis that the documents either were not originally created by GM or, if created by GM, had been altered. (ECF No. 53 at 33.) Theoharis then showed the tank sticker and shipper document to a California Corvette dealer, who he claims told him they "looked legit." (ECF No. 68 at 5.)

Two years later, Theoharis decided to sell the Corvette through Volo Auto Museum, a collector car dealership. (*Id.* at 6.) Volo advertised the Corvette as "a #s matching car with protect-o-plate, tank sticker and car shipper sheet." (ECF No. 60-9 at 5.)[1] This advertisement failed to attract any buyers, so Theoharis dropped his asking price from $139,000 to $105,000 and listed the car himself in various car publications, including Hemmings Motor News. (ECF No. 68 at 2, 7; ECF No. 73 at 7.) The Hemmings Motor advertisement stated that Theoharis had "the tank sticker, protecto plate and order copy." (ECF No. 60-4 at 3.) It also said: "Car is sold as is no warranty or returns come and drive it or have it inspected." (*Id.* at 4.) After reviewing the Hemmings Motor ad, Plaintiff Bryan Hepper contacted Theoharis and expressed interest in the Corvette. (ECF No. 68 at 9.) Over the course of a few days, the parties negotiated the sale via text message. (ECF No. 68 at 9.) On July 28, 2019, Hepper traveled to Theoharis' home to inspect the documents and test drive the vehicle. (ECF No. 63 at 9.) Hepper testified that he compared the documents to the car and that their correspondence motivated his purchase. (ECF No. 68 at 10.) At no point did Theoharis disclose to Hepper that the NCRS had refused to validate the tank sticker and shipper document. (ECF No. 63 at 12-13.) Later that day, Theoharis emailed Hepper a contract for sale, which stated:

> Bryan Hepper is agreeing to purchase my 1969 Corvette convertible 427/435 L89 heads, vin number 1946795736275. He will be getting the car, steering column, hardtop cart, exhaust manifolds, side pipes, side pipe covers, hardtop, red line tires, trim rings, center caps, rally wheels, car cover, all paper work. Bryan is aware the headlights were not functioning properly. We agree on dropping the price of the car to 104600.00 from 105000.00. The car is sold as is no warranty and no returns. Bryan Hepper will wire transfer a 5000.00 deposit into my account Andrew Theoharis [] routing number [] at Tri City National bank in Menomonee Falls Wi []. He will be doing

---

[1] "Numbers matching" is a term of art, which means, at a minimum, the vehicle has the original engine, transmission, and rear, and that all numbers on the drive train and major engine parts correspond to the correct part number, assembly/build dates, and Vehicle Identification Number. (ECF No. 1 ¶9 n.2.)

>a wire transfer for the remaining balance of 99,600.00 on Thursday 8-1-19. The car will be available for pickup when all funds clear for a total of 104,600.00. I will be sending Bryan pictures of all the parts that will be going with the sale and all listed above in this email. I will assist with shipping the buyer is responsible for all shipping cost. The clear title will be given to Bryan when the funds clear.

(ECF No. 68 at 11.) Hepper wrote back: "I agree to the terms and conditions." (*Id.* at 12.) He also confirmed over text message that he had "read the note and accepted." (*Id.*) Five days later, on August 2, 2019, Hepper returned to Theoharis' home where he signed a printed version of the contract and took possession of the Corvette. (*Id.*)

Less than two weeks later, while driving the Corvette, Hepper was rear-ended. (ECF No. 63 at 16.) The car sustained a little over $10,000 worth of damage and spent three months in a body shop receiving repairs. (ECF No. 68 at 13.) With repairs ongoing, Hepper submitted the tank sticker and shipper document to the NCRS for authentication. (ECF No. 63 at 16.) Timothy Gilmore responded and informed Hepper that the NCRS had already refused to validate these same documents years earlier. (*Id.*) Thereafter, Hepper asked Gary Bosselman, a Master Judge with the NCRS, to inspect both the documents and the Corvette itself. (*Id.* at 17.) Bosselman issued a report that concluded that the tank sticker, shipper document, and Protect-O-Plate were counterfeit, and the car was not originally a 1969 Chevrolet Corvette that possessed an L89 427/435 engine with aluminum heads and side-mounted exhaust. (*Id.* at 17-20.) Hepper also had the car inspected by Steven Cook of VetteWork, LLC. (*Id.* at 21.) Similar to Bosselman, Cook concluded that the car was not an authentic 1969 L89 Corvette with side-mounted exhaust. (*Id.* at 24.)

Now believing himself to be the victim of fraud, Hepper sent Theoharis a demand letter threatening litigation unless he received a full refund, though he failed to mention that the car had recently been in an accident. (ECF No. 68 at 15.) The two sides engaged in negotiations but were ultimately unable to reach a compromise. (*Id.*) This litigation followed.

## LEGAL STANDARD

"Summary Judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

**ANALYSIS**

Hepper alleges that, in the course of selling him an apparently counterfeit Corvette, Theoharis violated the Wisconsin Deceptive Trade Practices Act (WDTPA) and committed fraud, civil theft, breach of contract, and breach of express warranties. (*See* ECF No. 1.) Theoharis counterclaims that, for threatening litigation without disclosing that the Corvette had been in an accident, Hepper is guilty of civil theft, fraud, negligent misrepresentation, and strict responsibility misrepresentation. (*See* ECF No. 22.) Both parties have moved for summary judgment. (ECF Nos. 56, 57.) Because disputes of fact preclude resolution of Hepper's fraud and civil theft claims, those claims must proceed to trial. Summary judgment will be granted as to all other claims.

**I.       Most, But Not All, of Hepper's Claims Fail as a Matter of Law.**

**A.       Hepper's WDTPA Claim Fails Because It Is Based on an Omission.**

To assert a WDTPA claim, a plaintiff must allege that the defendant has, with the specified intent, made an "advertisement, announcement, statement or representation . . . to the public," which contains an "assertion, representation or statement of fact" that is "untrue, deceptive or misleading," and that the plaintiff sustained a pecuniary loss as a result of the "assertion, representation or statement of fact." Wis. Stat. §100.18(1). Importantly, the Wisconsin Supreme Court has confirmed that "[a] nondisclosure is not an 'assertion, representation or statement of fact' under Wis. Stat. § 100.18(1)." *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004). The WDTPA does not, therefore, contemplate claims based on allegedly fraudulent omissions. *Id.*

In this case, Hepper testified that he "bought the car because of the paperwork[;]" the paperwork "was the reason why [he] purchased the car." (ECF No. 55 at 18.) He claims that, had Theoharis "told [him] that the paperwork was rejected [by the NCRS], [he] would have ran from the car, honest to God." (*Id.*) His theory of liability is, thus, premised on an omission—he purchased the car when he otherwise would not have because Theoharis failed to disclose that the NCRS had refused to validate the tank sticker and shipping document. This is precisely the sort of claim the WDTPA excludes. Hepper tries to sidestep this problem by pointing to his deposition, where he stated: "I point-blank asked [Theoharis], 'Did you ever talk to NCRS?'" to which

Theoharis allegedly responded: "'No. I wouldn't deal with those nitpickers.'" (*Id.*) Hepper later clarified, though, that his question was about why Theoharis had never gotten the car judged by the NCRS; it had nothing to do with the allegedly fraudulent *paperwork* on which Hepper testified that he based his purchasing decision. (*Id.* at 23.) The record, therefore, contains no "untrue, deceptive, or misleading" assertion that caused Hepper any pecuniary loss, so his Wis. Stat. Section 100.18 claim fails.

      **B.     Disputes of Fact Preclude Resolution of the Fraud and Civil Theft Claims.**

Claims for both common law fraud and statutory civil theft, under Wis. Stats. §§895.446, 943.20, require a plaintiff to show (1) reasonable reliance on a representation of fact that (2) the defendant made either knowing that it was untrue or with reckless disregard for its veracity. *Malzewski v. Rapkin* 723 N.W.2d 156, 162-63 (Wis. Ct. App. 2006). Theoharis argues that Hepper cannot make either showing.

While the reasonableness of reliance is often a jury question, there are circumstances in which a court can hold a plaintiff's reliance unreasonable as a matter of law. *Novell v. Migliaccio*, 749 N.W.2d 544, 554 (Wis. 2008). Theoharis asks the Court to do as much here, contending that Hepper's alleged reliance on the tank sticker and shipping document to authenticate the Corvette could never be reasonable because the authenticity of a car is "a totally separate question from the documents." (ECF No. 53 at 129-30.) According to Timothy Gilmore, "cars can exist without paperwork and vice versa." (*Id.* at 130.) In other words, inauthentic paperwork does not necessarily entail an inauthentic vehicle in the same way that a forged receipt does not conclusively disprove the purchase of the items listed on that receipt. And, at the same time, valid paperwork does not imply an authentic vehicle any more than a valid ticket implies attendance at the event to which that ticket corresponds. Hepper testified that he forewent a professional inspection of the car because "[t]he paperwork correlated to the car," and there was, thus, "[n]o purpose of an inspection." (ECF No. 55 at 30.) While Hepper's testimony overstates the deductive potential of the Corvette documents, the Court cannot hold it unreasonable as a matter of law under Wisconsin precedent.

In *Malzewski* and *Pierce County v. Ladner*, No. 2015-AP-119, 2015 WL 9464652 (Wis. Ct. App. Dec. 29, 2015) (unpublished)—the cases on which Theoharis relies—the Wisconsin Court of Appeals rejected fraud claims on reasonability grounds when the plaintiffs declined to inspect their subject purchases despite knowledge of potential defects. But those "cases are

inapplicable" where the defendant does "not disclose any defects, generally or otherwise, so [the plaintiff] ha[s] no notice of defects to investigate." *Berard v. Schertz*, No. 2007-AP-2131, 2008 WL 2245868, at *5 n.4 (Wis. Ct. App. June 3, 2008). It is undisputed that Theoharis chose not to disclose that Gilmore had deemed the Corvette paperwork "defective." He argues, nonetheless, that Hepper's reliance on the paperwork qualifies as unreasonable under *Malzewski* and *Ladner* because Hepper's decision to inspect the Corvette himself demonstrates that he knew its authenticity was worth investigating. (ECF No. 75 at 5 n.2.) In other words, Theoharis suggests a buyer's choice to inspect his purchase implies notice of defects, even where the seller has stayed mum. This stretches Wisconsin law too far. All consumers know that the authenticity of a product they intend to purchase is, in some sense, worth investigating. They have a natural interest in ensuring the quality of their acquisitions. But under Theoharis' conception of fraud, if—acting on this natural interest—they inspect those prospective acquisitions, they automatically assume knowledge of defects and relieve the seller of his duty to disclose. Wisconsin law does not reward such devious behavior. Caveat emptor is not a license for chicanery. *See W.H. Hobbs Supply Co. v. Ernst*, 70 N.W.2d 615, 618 (Wis. 1955) (holding that purchasers must exercise *ordinary* discretion). Theoharis elected not to disclose that the NCRS had rejected his paperwork. He cannot now fairly claim that Hepper knew that his representation of that paperwork as genuine was untrue simply because the latter prudently inspected the Corvette for signs of authenticity. And to be clear, it is the reasonableness of the buyer's reliance on the seller's representation, not the quality of an unrelated inspection, that Wisconsin law permits a court to hold unreasonable as a matter of law. *See Lambert v. Hein*, 582 N.W.2d 84, 92 (Wis. Ct. App. 1998) (setting out the reasonable reliance requirement via citation to the Wisconsin Civil Jury Instructions Committee's sample instructions, 2401 Misrepresentation: Intentional, which explain that no one "has the right to rely upon representation that he or she knew was untrue").

As for whether Theoharis had the requisite knowledge to support the misrepresentation claims, that is a classic jury question. Theoharis asserts that nothing on the record indicates that he had any knowledge of the Corvette's inauthenticity. Hepper argues that, upon learning the Corvette paperwork was fake, Theoharis conducted a half-hearted investigation, colored by confirmation bias, into the car's authenticity, and therefore exhibited, at best, reckless disregard toward the truth of the statements contained in his Hemmings Motor advertisement. A reasonable jury could side with either. Theoharis claims that he based his belief in the car's authenticity on a

book written by an NCRS member, internet research, and the opinions of a Corvette salesman. (ECF No. 73 at 4.) This coupled with the fact that counterfeit paperwork does not guarantee a counterfeit car might be enough to suggest that Theoharis lacked the knowledge necessary to defraud Hepper. On the other hand, a factfinder might conclude that Theoharis' decision to forgo a professional inspection of the Corvette after he learned that its papers were fake represented at least reckless disregard of the truth.

Because the facts in evidence could support claims of fraud and civil theft, those claims must go to a jury for adjudication.

### C. Hepper's U.C.C. Claims Fail Because He Cannot Use Parol Evidence to Contradict the Express Terms of an Integrated Contract.

When the relevant facts are undisputed, a court may decide contract formation as a matter of law. *See Consol. Papers, Inc. v. Dorr-Oliver, Inc.*, 451 N.W.2d 456, 461 (Wis. Ct. App. 1989). In this case, it is undisputed that Theoharis emailed Hepper a written contract, and Hepper replied that he agreed to the terms, affirmed this via text, and signed a printed copy of the contract days later. (ECF No. 68 at 11-12.) That contract expressly stated that Theoharis' Corvette was to be "sold as is no warranty and no returns." (*Id.* at 11.) "Generally, a sale of property 'as is' means that the property is sold in its existing condition, and use of the phrase 'as is' relieves the seller from liability for defects in that condition." *As Is*, Black's Law Dictionary (11th ed. 2019). From Theoharis' point of view, he upheld his end of the bargain because he delivered the Corvette "as is," which is all the parties' contract required. Hepper argues that the contract was not a full and final expression of the agreement and seeks to introduce evidence of extrinsic negotiations to supplement the contract's terms and permit him to revoke his acceptance under Wisconsin's version of the Uniform Commercial Code. *See* Wis. Stats. §§402.608(1)-(2), 402.313(1)-(2).

The insurmountable issue Hepper confronts is that even "[i]f a writing is shown to be only a partial integration of the agreement reached by the parties, it is proper to consider parol evidence which establishes the full agreement, *subject to the limitation that such parol evidence does not conflict with the part that has been integrated in writing.*" *In re Spring Valley Meats, Inc.*, 288 N.W.2d 852, 855 (Wis. 1980) (citations omitted) (emphasis added). In this case, the contract contemplated an "as is" sale. The evidence Hepper intends to introduce explicitly contradicts that express condition of the writing. That is, he believes that unincorporated communications between he and Theoharis required the latter to proffer an authentic 1969 Corvette Convertible Roadster. The parol evidence rule prohibits consideration of these communications as a matter of law. The

Court must, therefore, accept that the parties agreed to an "as is" sale with "no warranty." And courts have consistently held that a buyer cannot seek revocation under the U.C.C. when a sale is made "as is" and with "no warranty." *See Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 309, 313 (E.D. Mich. 2005) (collecting cases). Accordingly, both of Hepper's U.C.C. claims fail.

## II. Theoharis Has Conceded His Counterclaims.

Hepper seeks summary judgment on all four of Theoharis' counterclaims. (ECF No. 56.) In his response brief, Theoharis stated that he "does not oppose Hepper's motion for summary judgment." (ECF No. 62 at 1 n.1.) Thus, as long as Hepper's motion "has been properly made and supported," the Court must grant it. *Leal v. TSA Stores, Inc.*, No. 2:13-cv-318, 2014 WL 7272751, at *1 (N.D. Ind. Dec. 17, 2014). Theoharis accuses Hepper of civil theft, intentional misrepresentation, negligent misrepresentation, and strict responsibility misrepresentation. (ECF No. 22 at 5-8.) These claims all require: (1) that Hepper made a representation of fact; (2) that the representation was untrue; and (3) that Theoharis' believed the representation to be true and relied on it to his pecuniary damage. *See Whipp v. Iverson*, 168 N.W.2d 201, 203 (Wis. 1969); *Ollerman v. O'Rourke Co.*, 288 N.W.2d 95, 99 (Wis. 1980). While Theoharis' counterclaim does allege that Hepper made a false representation of fact when he failed to disclose that the Corvette had been in an accident, nothing in the record indicates any residual pecuniary harm. The parties did not come to an agreement, nor did they exchange anything of value based upon Hepper's misrepresentation. (ECF No. 56 at 23.) As a result, Theoharis cannot state a claim for civil theft or any species of misrepresentation, and his counterclaim fails as a matter of law.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment, ECF No. 56, is **GRANTED in part and DENIED in part**. The motion is granted with respect to Defendant's counterclaims. The motion is denied in all other respects.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment, ECF No. 57, is **GRANTED in part and DENIED in part**. The motion is granted with respect to Plaintiff's

claims under Wis. Stats. §§100.18, 402.608, and 402.313.  The motion is denied with respect to Plaintiff's claims for fraud and civil theft under Wis. Stat. §§895.446 and 943.20.

Dated at Milwaukee, Wisconsin on June 16, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge